Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 496 | **DATE** | 5/21/2003 |
| **CASE TITLE** | Piskorek vs. IL Dept. Human Services | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (R. 23-1) is granted. Status hearing set for 7/31/03 is stricken. Any other pending dates are stricken. Any pending motions are denied as moot.

Amy J St. E

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 2 2 2003 | |
| | Notified counsel by telephone. | | date docketed | 34 |
| ✓ | Docketing to mail notices. | | IS | |
| ✓ | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAY 22 AM 7: 25 | date mailed notice | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office DISTRICT COURT | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| EILEEN M. PISKOREK, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 01 C 0496 | MAY 2 2 2003 |
| | ) | | |
| ILLINOIS DEPARTMENT OF | ) | | |
| HUMAN SERVICES, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge

Defendant Illinois Department of Human Services ("IDHS") has moved for summary judgment on Plaintiff Eileen Piskorek's claims. For the reasons set forth below, Defendant's motion is granted.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548,

2552, 91 L.Ed.2d 265 (1986). The party that bears the burden of proof on a particular issue, however, may not rest on its pleadings but must affirmatively demonstrate that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. at 2553. A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). The Court accepts the non-moving party's version of any disputed facts but only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## BACKGROUND

Ellen Piskorek, who is Caucasian, is a registered nurse with the IDHS. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 3.) Piskorek joined the IDHS in 1986, and since October 1998, she has worked at the Tinley Park Mental Health Center ("Tinley Park"). (*Id.*) Piskorek's supervisor at Tinley Park was Maxine Collins, who is African-American. (*Id.*, ¶ 5.)

In December 1998, Piskorek requested and was granted a medical leave of absence. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 6.) She returned to work for two weeks in January 1999 before she requested and was granted another medical leave of absence. (*Id.*, ¶ 7.) Piskorek returned to work from this second medical leave of absence in February 2000. (*Id.*, ¶ 9.) On March 28, 2000, Piskorek was placed on administrative paid leave and informed that she would have to obtain medical clearance before returning to work. (*Id.*, ¶¶ 11, 13.)

2

The parties dispute who was involved in the decision to place Piskorek on medical leave effective March 28, 2000. Piskorek contends that Collins was the supervisor who said that she wanted Piskorek to leave, but she admits that Collins lacked the authority to place her on administrative or medical leave. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 11, 43-44.) IDHS suggests that numerous individuals were involved in this decision, including Katie Jackson-Tiberi, the Director of Nursing; Patricia Dal Ponte, the Associate Director of Nursing; Janice Thomas, the Hospital Administrator; Mike Ally, the Manager of Labor Relations; and Brenda Hampton, the Facility Director/Network Manager. (*See* R. 23-1, Def.'s L.R. 56.1(a) Statement, ¶ 11.) Except for Hampton, all of these administrators are Caucasian. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 12.)

Ally arranged for Dr. David Hartman to examine Piskorek on April 3, 2000 to evaluate her fitness to return to work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 13.) Hartman reported that Piskorek was "unable to return to work in any effective capacity as a Registered Nurse, or within the mental health system generally." (*Id.*, ¶ 14. *See also* R. 23-1, Def.'s L.R. 56.1(a) Statement, Ex. H.) Following Hartman's examination, IDHS again placed Piskorek on medical leave, this time through June 17, 2000. (*Id.*, ¶ 16.)

As this medical leave period was due to expire, Piskorek contacted Ally, requesting permission to return to work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 17.) Ally arranged for Hartman to conduct a second examination on August 15, 2000. (*Id.* ¶ 18.) Hartman reported that Piskorek was not fit to return to duty. (*Id.* ¶ 19. *See also* R. 23-1, Def.'s L.R. 56.1(a)

Statement, Ex. I.) Accordingly, IDHS again placed Piskorek on medical leave, this time through March 1, 2001. (*Id.*, ¶ 20.)[1]

In March 2001, Piskorek again requested permission to return to work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 21.) Hartman examined her a third time and again concluded that she was "unable to return to work in any effective capacity as a Psychiatric Nurse, or within the mental health system or nursing care generally." (*Id.*, ¶ 22. *See also* R. 23-1, Def.'s L.R. 56.1(a) Statement, Ex. J.) Piskorek submitted a handwritten note and a typewritten letter from her personal physician suggesting that she was fit to return to work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 20, 23, 24; *see also* R. 29-1, Pl.'s Exhibits to L.R. 56.1 Statement, Ex. 5.) Piskorek remained on medical leave while the question of her fitness for duty was under review. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 26.)

Sometime in March or April 2001, Piskorek filed a grievance through her union representative, arguing that IDHS should have accepted her physician's assurances that she was fit to return to work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 38.) The IDHS hearing officer denied her grievance, however, determining that there had been no violation of the relevant labor agreement. (*Id.*) Nonetheless, Piskorek apparently continued to press the grievance.[2]

---

[1] Piskorek denies that she was placed on medical leave through March 1, 2001 in reliance on Hartman's second examination, but she provides no evidence to support this denial. Accordingly, this fact is deemed admitted.

[2] In March 2002, Piskorek's grievance was finally resolved pursuant to an agreement between the IDHS and the Illinois Nurses Association ("INA"). (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 39.) The parties agreed that Piskorek would remain on a medical leave of absence for eighteen months beginning February 2001 pursuant to Dr. Herron's evaluation. (*Id.*) After eighteen months, the parties agreed that Piskorek would be re-evaluated to assess her fitness for

4

On or about August 17, 2001, Jackson-Tiberi sent a written request for another evaluation of Piskorek to Sally Hilldebrand, the Manger of the Bureau of Employee Assistance and Support Services at IDHS' central office in Springfield. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 30.) Hilldebrand arranged for yet another examination of Piskorek, this time by Dr. Edward Tuder. (*Id.*, ¶ 31.) Tuder concluded that Piskorek "appear[ed] fit for duty." (*Id.* ¶ 32.) Accordingly, Piskorek returned to work on September 19, 2001. (*Id.*, ¶ 33.)

On November 22, 2001, Piskorek was placed on administrative leave. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 35.) Piskorek had missed four days of work during the period from September 19 to November 21 (*id.*), and the IDHS contends that it was concerned by her behavior in the unit. (*See* R. 23-1, Def.'s L.R. 56.1(a) Statement, 35.) Piskorek, however, denies that she was behaving inappropriately. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 35.) Another request for an evaluation of Piskorek was made to Hilldebrand. (*Id.*, ¶ 36.) This time, Dr. Steve Herron examined Piskorek. (*Id.*) Herron concluded that Piskorek was temporarily disabled and that she had "severe limitation[s] of functional capacity; [and was] incapable of minimal (sedentary) activity." (*Id.* ¶ 37.) Although she has not returned to work since November 2001, Piskorek is still employed by IDHS. (*Id.*, ¶¶ 63-64.)

Piskorek contends that the IDHS' refusal to allow her to return to work was a product of race discrimination. Specifically, she maintains that Collins, her supervisor, wanted to be rid of her because she is Caucasian. Piskorek points to evidence of various statements by Collins evidencing possible prejudice against Caucasians. For example, in October 1998, Piskorek tried

---

duty. (*Id.*) Piskorek, however, was not a formal party to this agreement, which was solely between the IDHS and the INA. (*Id.*)

5

to give Collins statements from her doctor to excuse various absences from work. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 55.) Collins responded, "I don't care about your problems, I don't want any crazy white nurses working for me." (*Id.*)[3] Although it is undisputed that Collins lacked authority to place her on administrative or medical leave, Piskorek contends that Collins was the only person who could make observations about her ability to work and that IDHS's management had to depend on those observations. (*Id.*, ¶¶ 43-44.)

Piskorek filed charges with the Illinois Department of Human Rights ("IDHR") in September 2000 and May 2001 claiming that she was a victim of discrimination based on her disability. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 50.) She filed another charge with the IDHR in October 2000 claiming that she was victim of discrimination based on her race. (*Id.*, ¶ 51.) Piskorek filed a charge with the Equal Employment Opportunity Commission on October 20, 2000. (*Id.*, ¶ 52.)

## ANALYSIS

In order to survive summary judgment, Piskorek must supply evidence that she was terminated because of IDHS's discriminatory motive. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir. 1998). Piskorek can try to provide evidence of discrimination

---

[3] At least one other person noted such statements by Collins. Bonnie Camacho, who also worked for the IDHS at Tinley Park, noted that Collins said, "'I used to work in a hospital with white folks but I felt uncomfortable so I left. If you feel uncomfortable here with black folks, then maybe you should leave.'" (*See* R. 33-1, Def.'s L.R. 56.1(a) Reply, ¶ 74.) Camacho also indicated that Collins, referring to Piskorek, stated "'Why doesn't she just quit and leave [Tinley Park] if she's afraid of her husband trying to kill her! Why doesn't she just go and move to another state. . . . All I need is another crazy white nurse to deal with!!!'" (*Id.*, ¶ 76 (multiple exclamation points in original).)

6

by either means of direct evidence or the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). IDHS contends that Piskorek has failed to cite evidence sufficient to withstand summary judgment under either approach. This Court agrees.

***First***, Piskorek has not supplied direct evidence of discrimination sufficient to withstand summary judgment. Piskorek's only purported direct evidence of discrimination are comments made by Collins to the effect that she "[didn't] want any crazy white nurses working for [her]." (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶ 55. *See also* R. 33-1, Def.'s L.R. 56.1(a) Reply, ¶¶ 74, 76.) These statements, however, do not constitute direct evidence of discrimination because it is undisputed that Collins lacked authority to place Piskorek on administrative or medical leave. (*See* R. 28-1, Pl.'s L.R. 56.1(b)(3)(A) Resp., ¶¶ 11, 43-44.)

Piskorek argues that Collins' comments are direct evidence of discrimination because Collins had input into the decisions to place her on administrative and medical leave. She suggests that Ally (and other members of IDHS's management) never observed her work and that IDHS must have relied on statements by Collins, her supervisor, when they made these decisions. (*See* 29-1, Pl.'s Exhibits to L.R. 56.1 Statement, Ex. 6, at ¶ 6.)

Piskorek has supplied no evidence, however, that Collins had any actual input into the decisions to place her on administrative and medical leave. Indeed, Piskorek has cited no evidence that IDHS's decisions were based on anything other than the recommendations by Doctors Hartman, Tuder and Herron. Absent such evidence, this Court cannot presume that Collins influenced IDHS's decisions to place Piskorek on administrative and medical leave. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2001) (court cannot presume that a non-

decision-making employee who made discriminatory statements influenced an adverse employment decision). Collins' statements, therefore, are not direct evidence of discrimination. *See West v. Ortho-McNeil Pharm. Corp.*, No. 01 C 3724, 2003 WL 260710, at *6 (N.D. Ill. Jan. 29, 2003) ("[T]o constitute direct proof of discrimination, isolated discriminatory statements must be made by the decision maker . . . or by 'those who provide input into the decision.'") (internal citations omitted).

Moreover, Piskorek has provided no evidence that Collins' statements were made in reference to the decisions to place her on administrative or medical leave. *See Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("[B]igotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action."); *Hunt v. City of Markham*, 219 F.3d 649, 652 (7th Cir. 2000) ("[T]he fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the *decision* had a discriminatory motivation.") (emphasis in original).

***Second***, Piskorek has not provided evidence sufficient to withstand summary judgment under the indirect burden-shifting method. Under *McDonnell Douglas*, Piskorek must make a *prima facie* showing that: (1) background circumstances exist which support an inference that IDHS is one of those unusual employers who discriminates against the majority; (2) she was performing her job satisfactorily, (3) she suffered an adverse employment action, and (4) IDHS treated similarly situated employees who were not members of her class more favorably. *See Mills v. Health Care Service Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999) (summarizing the

8

elements of the *McDonnell Douglas* test as applied in a reverse discrimination case); *see also Phelan v. City of Chicago*, 226 F.Supp.2d 914, 921 (N.D. Ill. 2002) (same).

IDHS contends that Piskorek cannot satisfy the first element of the *prima facie* test because she has not supplied evidence of circumstances that would support an inference that IDHS discriminates against Caucasians. Some examples of circumstances that would support such an inference are "schemes to fix performance ratings to [the plaintiff's] detriment, that the hiring system seemed rigged against [the plaintiff] because it departed from the usual procedures in an 'unprecedented fashion,' or that [the plaintiff was] passed over despite superior qualifications." *Mills*, 171 F.3d at 455 (citing *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)). Another example might be evidence that the plaintiff was the only Caucasian employee in a department and that nearly all of the decision makers were racial minorities. *Id.* (citing *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995)). A reverse-discrimination plaintiff may also show that "the person hired was clearly less qualified than the plaintiff, the hiring authority expressed intense interest in hiring a [minority candidate], and there was a pattern of hiring [minority candidates] in the past." *Id.* (citing *Duffy v. Wolle*, 123 F.3d 1026, 1036-37 (8th Cir. 1997)).

Of course, Piskorek has a minimal burden at the *prima facie* test stage. She need not present actual evidence of discrimination; instead, she must simply present enough to "'overcome the background presumption that a white [female] was not subject to employment discrimination." *Corral v. Chicago Faucet Co.*, No. 98 C 5812, 2000 WL 628981, at *3 (N.D. Ill. Mar. 9, 2000) (citation omitted).

9

It is clear, however, that Piskorek has failed to discharge even this minimal burden. Indeed, her only evidence consists of (1) various statements by Collins evidencing personal racial bias, and (2) a discrimination complaint filed by Bonnie Camacho, another nurse apparently working under Collins' supervision. (*See* R. 27-1, Pl.'s Opp. to Mot. for Summary Judgment, at p. 8; R. 33-1, Def.'s L.R. 56.1(a) Reply, ¶¶ 71-76.) Collins' statements, however, do not support an inference that IDHS discriminates against Caucasians because it is undisputed that Collins lacked authority to make the adverse employment decisions at issue. Moreover, Camacho's complaint offers no help because Piskorek has not presented evidence that Camacho is Caucasian and has suffered reverse discrimination.[4] Absent such evidence, Camacho's complaint fails to suggest any pattern of discrimination and cannot support an inference that IDHS discriminates against Caucasians. *See Fucarino v. Thornton Oil Corp.*, No. 98 C 1429, 1999 WL 691820, at *6 n.9 (N.D. Ill. Aug. 23, 1999).

In addition, IDHS argues that Piskorek cannot satisfy the fourth element of the *prima facie* test because she cannot establish that IDHS treated similarly situated employees who were not members of her class more favorably. Piskorek's only evidence that IDHS treated others differently consists of her claims that Juan Gray, an African-American co-worker, also had many

---

[4] In her brief, Piskorek contends that Camacho's complaint shows that "Collins also discriminated against another white nurses [sic] under her supervision" and this "establishes a pattern" of reverse discrimination by IDHS. (*See* R. 27-1, Pl.'s Opp. to Mot. for Summary Judgment, at p. 8.) Piskorek cites no evidence to support this assertion, however, which does not appear anywhere in her Local Rule 56.1(b)(3)(A) Statement. If Piskorek had evidence that Camacho is Caucasian and has suffered reverse discrimination, she should have cited it there. *See Markam v. White*, 172 F.3d 486, 490 (7th Cir. 1999) (holding that a district court is "entitled to disregard references to depositions and other discovery materials that appeared only in the supporting brief, and to decide the motion based on the factual record outlined [in the parties' statements of material facts]").

absences from work but apparently was permitted to continue working and was not placed on administrative or medical leave. (*See* R. 27-1, Pl.'s Opp. to Mot. for Summary Judgment, at p. 8.)

As IDHS points out, however, Piskorek has not presented any evidence suggesting that Gray was similarly situated to her. She has not presented any evidence, for example, suggesting that Gray was evaluated by doctors who found him to be unfit for work or that Gray's work attendance was comparable. Thus, Piskorek has supplied no basis for a reasonable jury to conclude that she and Gray were similarly situated but that IDHS treated him more favorably. *See Grevas v. Village of Oak Park*, 235 F.Supp.2d 868, 876-77 (N.D. Ill. 2002) (granting summary judgment where reverse discrimination plaintiff failed to supply any evidence that he was similarly situated to African-American employees who the defendant treated more favorably).[5]

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (R. 23-1) is granted.

DATED: May 21, 2003　　　　　　　　　ENTERED

　　　　　　　　　　　　　　　　　　　_[signature]_
　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　United States District Court Judge

---

[5] IDHS's motion for summary judgment also urges that Piskorek's discipline and harassment claims fail. In her opposition to summary judgment, Piskorek does not provide any evidence and, indeed, does not offer any argument to support these claims. Thus, to the extent that she has raised separate claims for discipline and harassment, those claims fail. *See Thompson v. Eaton Corp.*, No. 02 C 051, 2002 WL 31995670, at *5 (W.D. Wis. Dec. 11, 2002) ("'Arguments not developed in any meaningful way are waived.'") (*citing Central States, Southeast & Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999).